John W. Holcomb (Bar No. 172121)
john.holcomb@knobbe.com
Lauren Keller Katzenellenbogen (Bar No. 223370)
lauren.katzenellenbogen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Telephone:  949-760-0404
Facsimile:  949-760-9502

Elizabeth Wolstein (*pro hac vice* to be filed)
EWolstein@schlamstone.com
Samuel L. Butt (*pro hac vice* to be filed)
sbutt@schlamstone.com
SCHLAM STONE & DOLAN LLP
26 Broadway
New York, NY  10004
Telephone:  212-344-5400
Facsimile:  212-344-7677

Attorneys for Defendant US ELOGISTICS
SERVICE CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CREE, INC., a North Carolina corporation,<br><br>          Plaintiff,<br><br>v.<br><br>FASTBUY, INC., a New Jersey corporation;<br>SHUAI CHEN, an individual;<br>US ELOGISTICS SERVICE CORP., a New Jersey corporation;<br>DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 2:18-cv-01802 CJC (ASx)<br><br>**DECLARATION OF NICK WU IN SUPPORT OF MOTION OF DEFENDANT US ELOGISTICS SERVICE CORP. TO VACATE THE CLERK'S ENTRY OF DEFAULT**<br><br>Hearing<br>Date:   June 18, 2018<br>Time:   1:30 p.m.<br>Ctrm.:   9B<br><br>Hon. Cormac J. Carney |

1   Pursuant to 28 U.S.C. § 1746, NICK WU declares under penalty of perjury

2   the following to be true and correct:

3   1.   I am Chief Executive Officer (CEO) of defendant U.S. Elogistics,

4   Inc. ("USE" or "Elogistics").  I submit this Declaration in support of USE's

5   motion to vacate the default against USE entered in this case, to explain why USE

6   did not timely respond to the complaint in this case and the steps the company

7   took to prepare to respond once we learned about this lawsuit.  Unless otherwise

8   indicated, the facts set forth below are based upon my personal knowledge.

9   **Background: Elogistics' Business And Plaintiff's And Its Counsel's**

10  **Knowledge Of It Based On The Other Case They Are Litigating Against Us**

11  2.   The accompanying declaration of my Assistant, Xiaolan Jiang,

12  accurately describes the nature of Elogistics' business.  We do not engage in any

13  lines of business beyond the two components described in Ms. Jiang's

14  Declaration.  USE does not manufacture, advertise, market, import, or sell goods

15  to consumers; does not maintain any website that advertises, markets, or sells

16  goods to consumers; and does not engage in any payment processing of payments

17  to online sellers.  Our core business is warehousing and fulfillment, namely, to

18  store and ship out products sent to us by the product sellers, and we aim to do this

19  within 48 hours of receiving the sellers' instruction to ship.  Elogistics is

20  incorporated and headquartered in New Jersey.

21  3.   Thus, the allegations in the complaint against USE, that USE

22  supposedly markets, advertises, imports and sells products, and processes

23  payments, are contrary to fact.

24  4.   I was asked questions about USE's business by the Plaintiff's

25  counsel in this case at my February 6-8, 2018 deposition in Cree's pending case

26  in the Eastern District of New York against me, my mother, and two other

27  companies of which I was or am CEO, *Cree v. Chen*, 16 Civ. 1056 (NG) (SJB)

28  (the "EDNY Case").  In response, I described the nature of USE's business as

-1-

warehousing and fulfillment.  The relevant transcript pages are attached to USE's counsel's accompanying declaration.  At no point did I say that USE engages in advertising, importing, or sale of products, or the processing of payments, because that is untrue.

5.    Across all its warehouses USE ships approximately 100,000 packages per day.  It has shipped tens of millions of packages and has never been sued for trademark infringement except in this case, by the same lawyers that have been pursuing me and my family members for years with false allegations that the companies I work for are online sellers and advertisers of products.

**Reasons For Elogistics' Delay In Responding To The Complaint**

6.    The facts discussed here concerning my receipt of the complaint by email on March 14 are facts I learned as a result of our internal investigation under the direction of USE's counsel Schlam Stone & Dolan LLP ("SSD") and are not facts I knew at the time.

7.    I now know, but did not know at the time, that on March 14 Grace Liang sent an email to me and my assistant, Xiaolan Jiang, which forwarded a summons and complaint from the Albany law firm we use to receive service from our registered agent in California.  I did not see the email when it came in.  I do not use email much because I do not find it very useful for my purposes.  Instead of email I use two China-based applications, Wechat and Dingtalk, which are texting platforms, to send and receive internal messages.  Wechat is very widely used in China.  During the day I am on these apps all the time to communicate with my staff.  They are efficient and work well for our business.

8.    I was hardly if at all checking email on March 14 through March 17, when I left for China, a trip described further below.  Thus when Ms. Liang sent her email on March 14, I did not see it.  At this point in time the company was in the midst of moving from our warehouse on Sigle Street in Dayton New Jersey to a new warehouse twice the size (300,000 square feet) at 1100 Cranbury South

River Road in Monroe Township, NJ.  This required an extraordinary amount of work and I was working on it every day.

9.     As Ms. Jiang describes in her declaration, we had about 100 temporary employees working on this move.  Some people were working 15 hours a day and some were working seven days a week.  Since our lease at the old warehouse expired on February 18, 2018, we were paying rent as a holdover tenant for every day we remained in the old warehouse, so wanted to move out as quickly as possible.  Even with all the extra manpower it still took almost two months to move out of the old warehouse.  Every day we faced different problems.  There were countless small and large tasks that had to be done to move millions of items and hundreds of racks to the new warehouse.

10.    At the same time that the move was going on, USE was still operating its core business of fulfilling orders from third-party online sellers.  In the location we were moving out of (Sigle Street), we were shipping from 12,000 to 15,000 packages per day.  That business still had to continue while we were moving the millions of individual items and hundreds of racks.  During the period of the move our operations were running between two locations, which made things even more chaotic.  My assistant Ms. Jiang was coordinating all of work involved in getting the move done while helping me to ensure the continued running of USE's normal operations.

11.    On March 17, I left for a six-week trip to China with my wife and children and mother.  During the week leading up to my departure, on top of the move and running the company, I was spending time preparing for this trip, for example by planning for business meetings and travel while in China and identifying items to take with us for business or family purposes.  I am certain that the reason Ms. Liang's email fell through the cracks is because I was so busy with the move, operating the business between two locations, and getting ready

/ / /

for my trip to China, combined with the fact that in my usual day-to-day practice I do not regularly use email.

12. I apologize for missing the email with the service of process but did not intentionally ignore the email, and would never do that. There is no advantage to USE not responding to the complaint in this case. The complaint has no merit, rests on allegations about USE's business that the Plaintiff's lawyers know are not true based on the discovery in the EDNY Case, and we have every incentive and wish to defend the case vigorously on the merits. I respectfully request that the Court allow the company to do that. Based on what happened in this case I am now exploring changes to our internal procedure to ensure that this kind of falling through the cracks does not happen again. To my knowledge it has not happened before.

13. I returned from China on May 7, 2018. By the time I got back to work on May 9, I understand that Ms. Jiang had forwarded the legal papers we received in the mail to our counsel at SSD. At the direction and under the guidance of SSD we promptly investigated what happened and why the complaint fell through the cracks so as to be able to inform the Court and make this motion to vacate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

14.     I have had this Declaration translated into Mandarin so as to be sure all my statements here are accurate and confirm that they are accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of May, 2018, in Dayton, New Jersey.

_____
Hangfeng (Nick) Wu

28285999

-5-